Tawfiq J. Morrar, Esq. SBN 291072
**THE MORRAR LAW OFFICE**
9381 East Stockton Blvd, Suite 118
Elk Grove, CA 95624
Telephone: (916) 968-7973
Facsimile: (916) 647-0537
Email: tjmorrar@morrarlaw.com

**Attorney for Plaintiff**
**Halal Corner Market and Restaurant LLC**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HALAL CORNER MARKET AND RESTAURANT LLC, | : |
| | : |
| Plaintiff, | : |
| | : Case No. _____ |
| v. | : |
| | : |
| UNITED STATES OF AMERICA, | JUDICIAL REVIEW COMPLAINT |
| | : |
| Defendant. | |

## **COMPLAINT**

Plaintiff Halal Corner Market and Restaurant LLC, by and through undersigned counsel, pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7, hereby files this Complaint against Defendant United States of America and alleges:

1.      This action seeks judicial review of the Final Agency Decision ("FAD"), dated April 8, 2026, issued by the U.S. Department of Agriculture's ("USDA") Food and Nutrition Service ("FNS"), which imposed a six-month term disqualification on Halal Corner Market and Restaurant LLC's retail food store's participation as an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP").

JUDUCIAL REVIEW COMPLAINT                    1

**PARTIES**

2.    Plaintiff Halal Corner Market and Restaurant LLC is a resident and citizen of the State of California.

3.    Plaintiff Halal Corner Market and Restaurant LLC is the owner of Halal Corner Market and Restaurant, a retail food store located at 3025 West Capitol Avenue, West Sacramento, California 95691 ("Halal Corner Market and Restaurant" or "Store").

4.    Halal Corner Market and Restaurant is a "Retail Food Store" as defined in 7 C.F.R. § 271.2.

5.    Defendant United States of America is the federal government.

6.    USDA is an executive branch department of the federal government.

7.    FNS is an agency of the USDA.

8.    FNS generally administers and has promulgated regulations governing the SNAP pursuant to a delegation by Congress in Section 4 of the Food and Nutrition Act of 2008, 7 U.S.C. § 2013, and from the USDA Secretary.

9.    Formerly known as the Food Stamp Program, SNAP provides supplemental nutrition benefits to nearly 42 million Americans and more than 5.4 million residents of the State of California. SNAP's fundamental purpose is to provide eligible low-income households with increased food purchasing power. 7 U.S.C. § 2011.

10.    Pursuant to SNAP regulations set forth in 7 C.F.R. Part 278, FNS asserts that it has regulatory authority to authorize and disqualify retail food stores from participating in SNAP.

**JURISDICTION AND VENUE**

11.    This Court has jurisdiction over this action pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, 28 U.S.C. §§ 1331 and 1346.

12.    Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. §§ 1391(b) and (e) because Halal Corner Market and Restaurant, the retail food store that is the subject of

JUDUCIAL REVIEW COMPLAINT                    2

this action, is located in this judicial district and because the United States of America is deemed a resident of this district and has consented to suit in this district.

13.    Plaintiff Halal Corner Market and Restaurant LLC has exhausted all applicable administrative remedies required prior to the institution of this action.

## FACTUAL ALLEGATIONS

14.    Halal Corner Market and Restaurant is a convenience store that serves an impoverished community in West Sacramento.

15.    At all times relevant hereto, Halal Corner Market and Restaurant is and has been authorized by FNS to participate in SNAP as an authorized retailer.

16.    At all times relevant hereto, Halal Corner Market and Restaurant trained its employees regarding SNAP in accordance with FNS requirements.

17.    At all times relevant hereto, Halal Corner Market and Restaurant properly supervised its employees regarding SNAP transactions and program requirements.

18.    At all times relevant hereto, Halal Corner Market and Restaurant sold SNAP-eligible staple food items.

19.    At all times relevant hereto, Halal Corner Market and Restaurant also sold SNAP ineligible items.

20.    Numerous items sold at Halal Corner Market and Restaurant are and were SNAP-eligible items.

21.    The Food and Nutrition Act does not define "common ineligible items" or "major ineligible items."

22.    FNS's SNAP regulations do not define "common ineligible items" or "major ineligible items."

23.    FNS has not issued any publicly issued guidance defining "common ineligible items" or "major ineligible items."

24.     Stainless steel forks, petroleum jelly, Vicks inhalers, wastebasket liners, hot food items, plates or dishes are not "common ineligible items" or "major ineligible items" under FNS's regulations or otherwise.

25.     No other SNAP-authorized retail food store in the vicinity carries as wide an array of SNAP-eligible items at comparable prices.

26.     At all times relevant hereto, Halal Corner Market and Restaurant is and has been authorized by FNS to redeem SNAP benefits. Halal Corner Market and Restaurant's FNS-issued SNAP authorization number is #0743199.

27.     On or about December 8, 2025, FNS's Retailer Operations Division ("ROD") sent Halal Corner Market and Restaurant a letter charging the Store with accepting SNAP benefits in exchange for common and major ineligible items in alleged violation of FNS's SNAP regulations contained at 7 C.F.R. § 278.2(a) ("Charge Letter").

28.     The Charge Letter alleged that Halal Corner Market and Restaurant allegedly sold four different common ineligible items: stainless steel forks, petroleum jelly, Vicks inhalers, and a hot food item; and three different major ineligible items: wastebasket liners, packages of plates and a dish in exchange for SNAP benefits ("EBT") on four occasions in April 2025 to an undercover FNS investigator.

29.     On December 28, 2025, Halal Corner Market and Restaurant submitted its response to the Charge Letter.

30.     On January 14, 2026, FNS issued its initial determination ("Initial Determination"). In the Initial Determination, FNS concluded that the alleged violations set forth in the attachments to the Charge Letter occurred, declined to issue a warning or assess a Hardship Civil Money Penalty ("CMP"), and disqualified the Store from participating in SNAP for six months.

31.     The Initial Determination, which consisted of a short form letter, advised that FNS found that "the violations occurred at your store." The Initial Determination also failed to address the Store's request for a civil money penalty ("CMP").

JUDUCIAL REVIEW COMPLAINT                    4

32.    On January 20, 2026, Halal Corner Market and Restaurant timely sought administrative review of the Initial Determination pursuant to 7 C.F.R. Part 279.

33.    On March 20, 2026, Halal Corner Market and Restaurant submitted its response in support of its Request for Administrative Review of the Initial Determination ("Halal Corner Market and Restaurant's Response").

34.    Halal Corner Market and Restaurant's Response requested that FNS's Administrative and Judicial Review Branch ("ARB") reverse the Initial Determination and either issue it a warning or assess a Hardship CMP.

35.    On April 8, 2026, FNS Administrative Review Officer ("ARO") David A. Shively issued the FAD. A copy of the FAD is attached hereto as Exhibit A.

36.    In its FAD, ARB rejected all of Halal Corner Market and Restaurant's arguments, notwithstanding the evidence submitted by the Store, and affirmed the Initial Determination that imposed a six-month term disqualification from SNAP upon Halal Corner Market and Restaurant.

37.    The FAD concluded "[b]ased on the preponderance of evidence, this review agrees with the Retailer Operations Division's determination that a six-month disqualification for the violations committed, the minimum penalty allowed by regulations, is the appropriate sanction in this case." FAD at 6.

38.    The FAD failed to properly address Halal Corner Market and Restaurant's argument that stainless steel forks, petroleum jelly, Vicks inhalers, and hot food items were not "common ineligible items" or that wastebasket liners, plates, or a dish were not "major ineligible items."

39.    The FAD rejected Halal Corner Market and Restaurant's argument that the management of the Store was not careless and did not poorly supervise its employees, summarily concluding that "[e]ntrusting an unsupervised, inexperienced, and/or untrained clerk(s) to handle SNAP benefits is reasonably viewed as careless or the exercise of poor supervision." *Id*. at 5.

JUDUCIAL REVIEW COMPLAINT                    5

40.     ARO Shively did not conduct any independent analysis of the allegations set forth in the Charge Letter and merely relied upon the undercover investigator's report.

41.     The FAD failed to meaningfully address Halal Corner Market and Restaurant's argument that a warning was appropriate.

42.     The FAD rejected Halal Corner Market and Restaurant's argument that a CMP was appropriate, noting only that the Retailer Operations Division determined that there were 6 other SNAP-authorized stores within a one-mile radius of Halal Corner Market and Restaurant. *Id*. at 7.

43.     Walking up to two miles round-trip is an unreasonably long distance for SNAP beneficiaries to walk each way to purchase groceries, especially those who are elderly or disabled.

44.     The FAD improperly relied upon the Retailer Operations Division's determination, and ARO Shively did not conduct his own independent analysis.

### **FNS's SNAP REGULATIONS**

45.     Pursuant to 7 C.F.R. § 278.6(e)(5), the penalty for a firm not previously sanctioned for accepting SNAP benefits in exchange for "common nonfood items due to carelessness or poor supervision" (emphasis added) is a six-month term disqualification from participation in SNAP.

46.     FNS is required to "send the firm a warning letter if violations are too limited to warrant a disqualification." 7 C.F.R. § 278.6(e)(7).

47.     Pursuant to FNS's regulation governing Hardship CMPs, 7 C.F.R. § 278.6(f)(1), FNS is required to impose a CMP as a sanction in lieu of disqualification when doing so would "cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices."

## COUNT I - JUDICIAL REVIEW OF FINAL AGENCY ACTION
## PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R. § 279

48. Plaintiff Halal Corner Market and Restaurant LLC repeats and re-alleges paragraphs 1 through 47 as if fully set forth herein.

49. Halal Corner Market and Restaurant LLC denies that the Store engaged in violations of FNS's SNAP regulations or that a six-month disqualification from SNAP was an appropriate penalty.

50. At no time did Halal Corner Market and Restaurant sell any "common nonfood items" in exchange for SNAP benefits.

51. At no time did Halal Corner Market and Restaurant poorly supervise its employees.

52. No evidence in the Administrative Record exists that supports FNS's determination that Halal Corner Market and Restaurant poorly supervised its employees.

53. At no time did Halal Corner Market and Restaurant act carelessly in permitting the sale of "common nonfood items" in exchange for SNAP benefits.

54. No evidence in the Administrative Record exists that supports FNS's determination that Halal Corner Market and Restaurant acted carelessly in permitting the sale of "common nonfood items" in exchange for SNAP benefits.

55. FNS's determination that Halal Corner Market and Restaurant sold "common nonfood items" in exchange for SNAP benefits was invalid, unreasonable, arbitrary, capricious, and unsupported by the evidence.

56. FNS's determination that Halal Corner Market and Restaurant poorly supervised its employees was invalid, unreasonable, arbitrary, capricious, and unsupported by the evidence.

57. FNS's determination that Halal Corner Market and Restaurant acted carelessly in permitting "common nonfood items" to be sold in exchange for SNAP benefits was invalid, unreasonable, arbitrary and, capricious, and unsupported by the evidence.

JUDUCIAL REVIEW COMPLAINT                7

58. FNS's six-month disqualification of Halal Corner Market and Restaurant's participation in SNAP and denial of its request for a Hardship CMP was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence. See *Kim v. United States*¸ 903 F. Supp. 118 (D.D.C. 1995) (reversing FNS's imposition of a six-month term disqualification where there was no evidence of intent, no evidence that a pattern of selling ineligible items due to carelessness existed, no prior warnings were given, and no trafficking took place).

59. FNS's six-month disqualification of Halal Corner Market and Restaurant from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to consider all evidence related to the Store.

60. FNS failed to consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

61. FNS's six-month disqualification of Halal Corner Market and Restaurant from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to properly consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

62. FNS's analysis of other SNAP-authorized stores in the vicinity failed to consider where SNAP beneficiaries who shopped at Halal Corner Market and Restaurant resided.

63. FNS officials and employees did not visit other SNAP-authorized stores in the vicinity in April 2025.

64. FNS did not conduct a comparison of prices of staple food items at Halal Corner Market and Restaurant and other SNAP-authorized stores in the vicinity in April 2025.

65. FNS's six-month disqualification of Halal Corner Market and Restaurant from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS's analysis of other SNAP-authorized stores in the vicinity (1) failed to consider where SNAP beneficiaries who shopped at Halal Corner Market and Restaurant resided; and (2) was not based, upon information and belief, on store visits to other SNAP-authorized retailers in the vicinity in April 2025.

JUDUCIAL REVIEW COMPLAINT                8

66.     FNS's six-month disqualification of Halal Corner Market and Restaurant from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS's analysis was not based on a comparison of (a) prices charged for staple food items or (b) the variety of staple food items at Halal Corner Market and Restaurant and other SNAP-authorized stores in the vicinity in April 2025.

67.     FNS's six-month term disqualification of Halal Corner Market and Restaurant from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to interview any SNAP beneficiaries whose EBT cards were used at the store in April 2025.

68.     FNS's six-month term disqualification of Halal Corner Market and Restaurant from participating in SNAP was improper because it was not based on evidence that Halal Corner Market and Restaurant poorly supervised its employees.

69.     FNS's six-month term disqualification of Halal Corner Market and Restaurant from participating in SNAP was improper because FNS had no evidence that Halal Corner Market and Restaurant acted carelessly in permitting the exchange of nonfood items for SNAP benefits.

70.     FNS's denial of Halal Corner Market and Restaurant's request for a Hardship CMP was not rationally related to any legitimate governmental interest.

71.     FNS's denial of Halal Corner Market and Restaurant's request for a Hardship CMP is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

72.     FNS's failure to issue a warning to Halal Corner Market and Restaurant based on the sale of ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

73.     FNS's imposition of a six-month term disqualification based on the sale of SNAP-ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

74. FNS's denial of Halal Corner Market and Restaurant's request for a Hardship CMP represents agency action beyond the scope of authority granted by Congress to FNS when it delegated power to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

75. 7 C.F.R. § 278.6(e)(5), is inconsistent with the directive from Congress contained in 7 U.S.C. § 2021(a)(2) in violation of the Food & Nutrition Act of 2008 and the Administrative Procedure Act.

76. To the extent that 7 C.F.R. § 278.6(e)(5) purports to provide criteria for the disqualification of a SNAP-authorized retailer food store based on the sale of SNAP-ineligible items, those criteria are inconsistent with the directive from Congress contained in 7 U.S.C. § 2021(a)(1) in violation of the Food & Nutrition Act of 2008 and the Administrative Procedure Act.

77. To the extent that 7 C.F.R. § 278.6(e)(5) purports to provide criteria for the disqualification of a SNAP-authorized retailer food store disqualified from SNAP pursuant to a reciprocal disqualification of such store from the WIC program pursuant to 7 C.F.R. § 278.6(e)(8), those criteria are consistently ignored by FNS and its officials in violation of the Food & Nutrition Act of 2008 and the Administrative Procedure Act.

78. FNS's denial of Halal Corner Market and Restaurant's request for a Hardship CMP, which was based entirely upon circumstantial evidence, represents agency action beyond the scope of authority granted by Congress to FNS when it delegated the power to promulgate and enforce reasonable regulations pursuant to the Food and Nutrition Act of 2008.

79. District courts must exercise independent judgment in deciding whether an agency has asked within its statutory authority. *Loper Bright v. Raimondo*, 603 U.S. 369 (2024).

80. District courts should no longer grant deference to agency actions.

81. District courts should set aside agency actions that are unsupported by substantial evidence.

JUDUCIAL REVIEW COMPLAINT                10

82. FNS's decision to deny the Plaintiff's request for a Hardship CMP exceeded its authority under the Food & Nutrition Act of 2008.

83. FNS's decision to deny the Plaintiff's request for a Hardship CMP exceeded its authority under its SNAP regulations.

84. FNS's decision to deny the Plaintiff's request for a Hardship CMP was not supported by substantial evidence.

85. At no time did FNS provide Halal Corner Market and Restaurant with a warning that non-food items, including (but not limited to) stainless steel forks, petroleum jelly, Vicks inhalers, wastebasket liners, hot food items, plates or dishes, were being sold in exchange for SNAP benefits prior to issuance of the Charge Letter.

86. FNS should have provided Halal Corner Market and Restaurant with a warning that non-food items, including (but not limited to) stainless steel forks, petroleum jelly, Vicks inhalers, wastebasket liners, hot food items, plates or dishes, are not eligible for the redemption of SNAP benefits prior to the issuance of the Charge Letter.

87. FNS should have provided Halal Corner Market and Restaurant with a warning that non-food items, including (but not limited to) stainless steel forks, petroleum jelly, Vicks inhalers, wastebasket liners, hot food items, plates or dishes, were being sold at the Store in exchange for SNAP benefits after the first alleged violation.

88. In the event that FNS had provided Halal Corner Market and Restaurant with a warning that non-food items, including (but not limited to) stainless steel forks, petroleum jelly, Vicks inhalers, wastebasket liners, hot food items, plates or dishes, were being sold at the Store in exchange for SNAP benefits after the first alleged violation, no further violations would have occurred.

89. In the event that FNS provided Halal Corner Market and Restaurant with a warning that non-food items, including (but not limited to) stainless steel forks, petroleum jelly, Vicks inhalers, wastebasket liners, hot food items, plates or dishes were being sold at the Store in

JUDUCIAL REVIEW COMPLAINT          11

exchange for SNAP benefits after the first alleged violation, Halal Corner Market and Restaurant would have re-trained its employees regarding SNAP requirements.

90. FNS had no basis to have concluded that stainless steel forks, petroleum jelly, Vicks inhalers, wastebasket liners, hot food items, plates or dishes are "common ineligible items" or "major ineligible items."

91. A SNAP retailer charged with the exchange of "common ineligible items" or "major ineligible items" is eligible for imposition of a Hardship CMP in lieu of disqualification in the event that there are no other SNAP-authorized retail food stores in the vicinity selling as large a variety of staple food products at comparable prices.

92. Prior to issuing the Initial Determination, FNS failed to conduct any analysis of the variety of staple food products carried at Halal Corner Market and Restaurant or any other SNAP-authorized retailer in the vicinity during April 2025.

93. Upon information and belief, prior to issuing the Initial Determination, FNS failed to conduct any analysis of the pricing of staple food products carried at Halal Corner Market and Restaurant

94. Upon information and belief, prior to issuing the Initial Determination, FNS failed to conduct any analysis of the pricing of staple food products carried at other SNAP-authorized retailers in the vicinity.

95. No other SNAP-authorized retailer in the vicinity sells as wide a variety of SNAP-eligible items at comparable prices as Halal Corner Market and Restaurant

96. FNS's decision to deny Halal Corner Market and Restaurant's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contains no analysis regarding the prices charged for comparable staple food items by other SNAP-authorized retailers in the vicinity.

97. FNS's decision to deny Halal Corner Market and Restaurant's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contained no

JUDUCIAL REVIEW COMPLAINT          12

analysis regarding the varieties of staple food items carried by other SNAP-authorized retailers in the vicinity.

98.    FNS's decision to deny Halal Corner Market and Restaurant's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contained no analysis regarding the prices of comparable staple food items carried by other SNAP-authorized retailers in the vicinity.

99.    Whether staple food items at comparable prices are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether to grant a Hardship CMP.

100.    Whether as wide a variety of staple food items are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether to grant a Hardship CMP.

101.    7 C.F.R. § 278.6(f)(1) provides, in pertinent part, that "FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices."

102.    FNS, in issuing the FAD, relied upon records and other information never provided to Halal Corner Market and Restaurant.

103.    In its FAD, FNS relied upon data concerning other SNAP-authorized stores not "in the vicinity" of the Store.

104.    Upon information and belief, in urban areas, until recently, FNS used a half-mile radius to determine whether other SNAP retailers are "in the vicinity" in determining whether to assess a Hardship CMP. Without going through the "notice and comment" procedure required by the Administrative Procedure Act, FNS appears to have modified the radius it uses in deciding whether to assess a Hardship CMPs.

JUDUCIAL REVIEW COMPLAINT              13

105.   FNS calculates distance "as the crow flies," not walking or driving distance when determining whether there are other stores "in the vicinity" in the context of deciding whether to assess a Hardship CMP.

106.   FNS's use a one-mile radius in urban areas for determining whether other SNAP retailers are "in the vicinity" for Hardship CMP purposes is arbitrary and capricious.

107.   FNS's use of a one-mile radius for determining whether other SNAP retailers are "in the vicinity" for Hardship CMP purposes ignores that many SNAP beneficiaries do not have cars and do not (and cannot) walk up to a two miles (round trip) to shop at a SNAP-authorized retailer.

108.   SNAP beneficiaries, especially those who are elderly and/or disabled, can be reasonably expected to walk as much as a mile (each way) to shop at the unidentified stores referenced in the FAD.

109.   No factual support exists for FNS's decision to deny Halal Corner Market and Restaurant's request for a Hardship CMP.

110.   FNS relied upon undisclosed analyses, including analyses of other SNAP-authorized retail food stores, which were never provided to Halal Corner Market and Restaurant.

111.   The FAD was not based upon any declarations or affidavits from USDA or FNS employees or contractors whose identities were disclosed to Halal Corner Market and Restaurant.

112.   The FAD is FNS's final administrative determination that its six-month disqualification of Halal Corner Market and Restaurant from participation as an authorized SNAP retailer was properly imposed.

113.   The FAD is subject to judicial review and a trial *de novo* pursuant to 7 U.S.C. §§ 2023(a)(13), (15).

114.   Judicial reviews pursuant to 7 U.S.C. §§ 2023(a) are not governed by the Administrative Procedure Act, and the evidence is not limited to the administrative record prepared by FNS.

115.    The FAD was based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

116.    The FAD was based on SNAP regulations promulgated by FNS in excess of the authority granted to it (and USDA) by Congress.

117.    FNS incorrectly determined that Halal Corner Market and Restaurant was not eligible for a Hardship CMP in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

118.    FNS's denial of Halal Corner Market and Restaurant's request for a Hardship CMP was premised upon an erroneous, unsupportable, arbitrary, and capricious interpretation of 7 C.F.R. § 278.6.

119.    In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to Halal Corner Market and Restaurant

120.    Plaintiff respectfully requests a *de novo* review of FNS's FAD, which affirmed the term disqualification of Halal Corner Market and Restaurant's store from SNAP and determined that the alleged violations took place.

121.    Plaintiff respectfully requests a *de novo* review of FNS's FAD in which FNS affirmed the decision in the Initial Determination to decline to issue a warning.

122.    Plaintiff respectfully requests a *de novo* review of FNS's FAD, which affirmed the decision in the Initial Determination to decline to assess a Hardship CMP.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Halal Corner Market and Restaurant LLC respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States and issue an Order granting the following relief:

(a)    Reversing the FAD;

(b)    Vacating FNS's Initial Determination;

(c)    Declaring that stainless steel forks, petroleum jelly, Vicks inhalers, wastebasket liners, hot food items, plates or dishes are not "common ineligible items" or "major ineligible items" under FNS's SNAP regulations;

JUDUCIAL REVIEW COMPLAINT              15

(d)  Declaring the FNS's policy of not obtaining conducting store visits and failing to obtaining data regarding the variety and pricing for staple food items at other SNAP-authorized stores in the vicinity is arbitrary and capricious, inconsistent with the Administrative Procedure Act and the Food & Nutrition Act of 2008, and exceeds the authority delegated by Congress therein;

(e)  Declaring that FNS's use of a one-mile radius in determining whether to assess a Hardship CMP is arbitrary and capricious, inconsistent with the Administrative Procedure Act and the Food & Nutrition Act of 2008, and exceeds the authority delegated by Congress therein;

(f)  Preliminarily enjoining FNS from disqualifying Halal Corner Market and Restaurant from participating in SNAP during the pendency of this action;

(g)  Permanently enjoining FNS from denying authorization to Halal Corner Market and Restaurant to participate in SNAP based upon the Initial Determination and the FAD;

(h)  In the alternative, directing FNS to impose a Hardship Civil Monetary Penalty in an amount consistent with FNS's regulations;

(i)  Awarding Halal Corner Market and Restaurant LLC an amount equal to its reasonable attorneys' fees and costs, including pursuant to the Equal Access to Justice Act; and

(j)  Such other and further relief as the Court may deem just and proper.


Respectfully Submitted,

Date: May 5, 2026                    */s/ Tawfiq Morrar*
                                     Tawfiq Morrar, Esq.
                                     *Attorney for Plaintiff Halal Corner Market and Restaurant LLC*

JUDUCIAL REVIEW COMPLAINT          16

# EXHIBIT A



**United States Department of Agriculture**

Food and Nutrition Service

Retailer and Issuance Policy and Innovation Division

Administrative and Judicial Review Branch

1320 Braddock Place, Room 5042 Alexandria, VA 22314

David.Shively @usda.gov

April 8, 2026

Stewart Fried
OFW Law
2000 Pennsylvania Ave N.W.
Suite 4003
Washington, DC 20006

　　　　RE: Case Number - C0297431
　　　　Halal Corner Market & Restaurant
　　　　3025 W Capitol Ave
　　　　West Sacramento, CA 95691-2912

Dear Counselor:

Enclosed is the Final Agency Decision of the U.S. Department of Agriculture, Food and Nutrition Service in response to your January 20, 2026 request for administrative review. Also included is a statement regarding applicable rights to a judicial review.

The U.S. Department of Agriculture, Food and Nutrition Service finds that there is sufficient evidence to support the determination by the Office of Retailer Operations and Compliance to impose a six-month disqualification against Halal Corner Market & Restaurant from participating as an authorized retailer in the Supplemental Nutrition Assistance Program.

Sincerely,

DAVID A. SHIVELY
Administrative Review Officer

Enclosure: Final Agency Decision

USDA is an Equal Opportunity Provider, Employer and Lender.

1

**U.S. Department of Agriculture**
**Food and Nutrition Service**
**Administrative Review Branch**

| | |
|---|---|
| **Halal Corner Market & Restaurant,** | |
| **Appellant,** | |
| **v.** | |
| **Retailer Operations Division,** | **Case Number: C0297431** |
| **Respondent.** | |

## FINAL AGENCY DECISION

It is the decision of the United States Department of Agriculture (USDA) that there is sufficient evidence to support a finding that a six-month disqualification of Halal Corner Market & Restaurant (Appellant) from participation as an authorized retailer in the Supplemental Nutrition Assistance Program (SNAP), as initially imposed by the Retailer Operations Division, was appropriate.

## ISSUE

The issue accepted for review is whether the Retailer Operations Division took appropriate action, consistent with 7 CFR § 278.6(f)(1) and 7 CFR § 278.6(a) and (e)(5) in its administration of the SNAP, when it imposed a six-month period of disqualification against Appellant.

## AUTHORITY

7 USC § 2023 and the implementing regulations at 7 CFR § 279.1 provide that "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may file a written request for review of the administrative action with FNS."

## CASE CHRONOLOGY

The USDA investigated the compliance of Appellant with federal SNAP law and regulations during the period of April 9, 2025, through April 21, 2025. The investigative report documented personnel at Appellant's firm accepted SNAP benefits in exchange for ineligible merchandise on four occasions. As a result of evidence compiled during this investigation, by letter dated December 8, 2025, the Retailer Operations Division charged ownership with violating the terms and conditions of the SNAP regulations at 7 CFR § 278.2(a) and noted the violations warranted a

2

six-month disqualification period. The letter further stated that Appellant store was not eligible to pay a Hardship Civil Money Penalty because FNS determined that the disqualification will not cause hardship to SNAP households. Additionally, Appellant was given 10 days from receipt of the letter to provide a response. On December 10, 2025, Appellant requested an extension, which was approved, however; no other response was provided.

After re-considering the evidence, the Retailer Operations Division notified Appellant in a letter dated January 14, 2026, that the violation cited in the charge letter occurred at the firm and that a six-month period of disqualification was warranted. Thereafter, on January 20, 2026, Appellant requested an administrative review of the Retailer Operations Division's determination. The request was granted, and implementation of the disqualification has been held in abeyance pending completion of this review.

## STANDARD OF REVIEW

In appeals of adverse actions, the Appellant bears the burden of proving by a preponderance of the evidence, that the administrative actions should be reversed. That means the Appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

## CONTROLLING LAW

The controlling statute in this matter is contained in the Food and Nutrition Act of 2008, as amended, 7 USC § 2021 and § 278 of Title 7 of the Code of Federal Regulations (CFR). Sections 278.6(a), (e)(5) and e(6) establish the authority upon which a twelve-month disqualification may be imposed against a retail food store or wholesale food concern.

7 CFR § 278.6(a) states, inter alia:

> FNS may disqualify any authorized retail food store . . . if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part. Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, evidence obtained through a transaction report under an electronic benefit transfer system . . .

Section 278.6(e)(5) of the SNAP regulations states, in part, that a firm is to be disqualified for six months:

> [I]f it is to be the first sanction for the firm and the evidence shows that personnel of the firm have committed violations such as but not limited to the sale of common nonfood items due to carelessness or poor supervision by the firm's ownership or management.

In addition, 7 CFR § 278.6(f)(1) provides for civil money penalty (CMP) assessments in lieu of disqualification in cases where disqualification would cause "hardship" to SNAP households benefit because of the unavailability of a comparable participating food store in the area to meet

2

their shopping needs. It reads:

> FNS may impose a civil money penalty as a sanction in lieu of disqualification when . . . the firm's disqualification would cause hardship to SNAP households benefit because there is no other authorized retail food store in the area selling as large a variety of staple food items.

## APPELLANT'S CONTENTIONS

Appellant, through counsel, made the following summarized contention in its administrative review request dated January 20, 2026, and its supplemental response dated March 19, 2026, in relevant part:

- The charge letter and exhibits omitted critical information regarding the events that transpired at Appellant-firm between April 13, 2025 and April 21, 2025. These omissions and misrepresentations make clear that a preponderance of the evidence did not support that Appellant violated FNS's SNAP regulations.
- Appellant objects to the issuance of the charge letter and term disqualification based on records not provided to the store or counsel. A federal agency should not disqualify a retail food store from participating in the SNAP program without affording it a full and fair opportunity to seek a review of all such records.
- It is respectfully submitted that FNS should have issued a warning to Appellant. See 7 C.F.R. §278.6(e)(7). Without question, the alleged violations were too limited to warrant a term disqualification.
- It is important to note that neither the Food and Nutrition Act of 2008 nor FNS's SNAP regulations define "common ineligible items" or "major ineligible items."
- It is important to note that "carelessness" and "poor supervision" are also not defined terms in the Act or FNS's SNAP regulations. There is also no evidence to support any FNS determination that Appellant's ownership or management was careless or provided poor supervision over its employees. To the contrary, Appellant's manager was and is frequently onsite and actively supervised its employees, including during SNAP transactions.
- Similarly, FNS's regulations do not define "personnel."
- Finally, Appellant submits that FNS's regulation, at 7 C.F.R. §278.6(e)(5), is void due to vagueness. Neither SNAP retailers nor FNS officials (including, but not limited to, Administrative Review Officers) have clear guidance regarding what is meant by "common nonfood items," "carelessness," "poor supervision," or "personnel."
- Congress did not grant the agenda or USDA with express authority to condition a retailer's authorization (or withdrawal therefrom) upon those terms. FNS has also not issued publicly available guidance regarding that term. As a result, FNS cannot conclude that all ineligible items are common non-food items and cannot impose a term disqualification based thereon.
- A preponderance of the evidence did not establish that the ineligible item allegedly sold at the store in exchange for SNAP benefits involved "common ineligible items," "major ineligible items," or was the result of "carelessness or poor supervision by the firm's ownership or management.

3

- Additionally, there was no record evidence that supported the determination that six ineligible items noted in Exhibits C, D, E and F were sold in exchange for SNAP benefits due to "carelessness or poor supervision by the firm's ownership or management."
- There was no evidence that supported the determination that only ineligible items were sold in exchange for SNAP benefits due to "carelessness or poor supervision by the firm's ownership or management."
- No record evidence that any store manager was careless or failed to properly supervise the store's clerks and FNS lacked the authority to presume so.
- In the alternative, FNS should impose a hardship CMP.

The preceding may represent only a summary of the Appellant's contentions presented in this matter. However, in reaching a decision, full attention and consideration has been given to all contentions presented, including any not specifically recapitulated or specifically referenced. Appellant also submitted a declaration of Appellant's managing member.

### ANALYSIS AND FINDINGS

This purpose of this review is to either validate or to invalidate the determination made by the Retailer Operations Division; it is limited to the facts at the basis of the Retailer Operations Division's determination at the time it was made.

The charges of violations are based on the findings of a formal USDA investigation conducted of the compliance of Appellant with Federal SNAP law and regulations. Investigators are trained thoroughly before entering any retail establishment and all protocols, including but not limited to what can and cannot be said. Investigators sign, under penalty of perjury, that investigative reports are true and correct. The investigators in these cases are licensed by the states and on top of being prosecuted for perjury, can lose their jobs and their licenses giving them no incentive to fabricate the information contained in the Reports of Investigation.

All transactions are fully documented, and a complete review of this documentation has yielded no known error or discrepancy in the reported findings. The investigation report is specific and thorough with regard to the dates of the violations, the specific facts related thereto and is supported by documentation that confirms specific details of the transactions. The documentation on record includes EBT receipts and photos showing that 3 major ineligible nonfood item, 6 ineligible nonfood items, and 21 eligible food items were purchased with SNAP benefits by the investigator. Additionally, the total purchase costs of each of the transactions involved in the investigation is documented on SNAP terminal receipts obtained during each transaction and matches the reported purchase totals indicated in the investigation report.

The FNS investigative report documents by a preponderance of the evidence that an employee working at the Appellant firm accepted SNAP benefits for an ineligible nonfood item on four occasions during the investigative period indicating an ongoing pattern of SNAP violations as defined by Section 271.2 of the SNAP regulations. The investigation report documents by a preponderance of the evidence that a store employee engaged in the misuse of SNAP benefits noted in Exhibits C, D, E, and F, warranting a disqualification as a SNAP retail food store for a period of six months.

4

As stated above, in an appeal of an adverse action, the Appellant bears the burden of proving by a preponderance of evidence that the administrative action should be reversed. That means the Appellant has the burden of providing relevant evidence that a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than untrue.

Appellant alleges it is unable to meaningfully respond to the charges because it is not provided with all the information on which the charges are based. Along with charge letter, Appellant was provided with the investigative report which provides a detailed description of the violative transactions, including the non-food ineligible item purchased with SNAP benefits. Consequently, this review does not find such argument to be persuasive.

Appellant also stated there is no evidence that Appellant's ownership was careless or provided poor supervision. Appellant contends that 7 CFR § 278.6(e)(5) is void due to vagueness. Neither SNAP retailers nor FNS staff have clear guidance regarding what is meant by "major ineligible nonfood items," "carelessness," "poor supervision," or "personnel." Therefore, FNS lacked the authority to unilaterally decide that these items are "common nonfood items; accordingly, the term disqualification must be reversed. Appellant also argued that a warning letter, rather than a disqualification, should have been issued because the alleged violations were too limited to warrant a disqualification.

First, there is no regulatory threshold for the number of ineligible items purchased. The acceptance of SNAP benefits for ineligible items, as noted in Exhibits C through F, are violations of the SNAP rules and regulations and warrants a disqualification as a SNAP retail food store. The ineligible items sold, whether major or not, were obvious nonfood items and would not readily be confused with eligible edible food items. SNAP regulations explicitly state that FNS shall impose a six-month disqualification period if the evidence shows that personnel of the firm have committed violations such as the sale of common nonfood items in exchange for SNAP benefits due to carelessness or poor supervision by the firm's ownership or management. This review also finds Appellant's arguments that 7 C.F.R. § 278.6(e)(5) is void due to vagueness and that FNS does not define "personnel" as unpersuasive.

Appellant further argues that evidence does not exist establishing that the ineligible items sold at the Store in exchange for SNAP benefits were the result of "carelessness or poor supervision by the firm's ownership or management. However, had an effective compliance policy and program been in effect at the firm, it is unlikely that two different employees would have made such obvious mistakes. Entrusting an unsupervised, inexperienced, and/or untrained clerk(s) to handle SNAP benefits is reasonably viewed as careless or the exercise of poor supervision. Accordingly, the Retailer Operations Division attributed the violations to "carelessness, or poor supervision by the firm's ownership or management," pursuant to 7 CFR § 278.6(e)(5) of the SNAP regulations.

The record also shows that the owner signed an application to participate as a retailer in SNAP. By signing the application, the owner agreed to accept responsibility on behalf of the firm for compliance with all statutory and regulatory requirements associated with participation in SNAP. The record clearly establishes that the owner agreed to abide by program rules, including taking

5

responsibility for violations committed by any of the firm's employees, whether paid or unpaid, new, full-time or part-time. In this case, Appellant's store sold ineligible items for SNAP benefits on four occasions. Based on the preponderance of evidence, this review agrees with the Retailer Operations Division's determination that a six-month disqualification for the violations committed, is the appropriate sanction in this case.

Appellant was also reviewed for the imposition of a civil money penalty in lieu of a disqualification. 7 CFR § 278.6(f)(1) reads, in part, "FNS may impose a civil money penalty as a sanction in lieu of disqualification when . . . the firm's disqualification would cause hardship to [SNAP] households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices." The Retailer Operations Division determined that there are 6 authorized stores within a mile radius of Appellant including two medium grocery stores, one supermarket, and two super stores which offer comparable to superior stock and inventory of staple foods. After a review of the particular stores, this review agrees with the determination of the Retailer Operations Division that the six-month disqualification of Appellant from the SNAP would not create a hardship to customers is sustained and a civil money penalty in lieu of disqualification is not appropriate in this case.

## CONCLUSION

The determination by the Retailer Operations Division to impose a six-month disqualification against Halal Corner Market & Restaurant from participating as an authorized retailer in SNAP is sustained. In accordance with the Food and Nutrition Act, and the regulations, this penalty shall become effective 30 days after delivery of this letter. A new application for participation in SNAP may be submitted ten days prior to the expiration of the six-month disqualification period.

## RIGHTS AND REMEDIES

Applicable rights to a judicial review of this decision are set forth in 7 USC § 2023 and 7CFR § 279.7. If a judicial review is desired, the Complaint, naming the United States as the defendant, must be filed in the U.S. District Court for the district in which the Appellant's owner resides or is engaged in business, or in any court of record of the State having competent jurisdiction. If a complaint is filed, it must be filed within 30 days of delivery of this decision. The judicial filing timeframe is mandated by the Act, and this office cannot grant an extension.

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.

David A. Shively                                             April 8, 2026
Administrative Review Officer